**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAMON MONTES DE OCA** | : | |
| 776 Lincoln Street | : | |
| Hazelton, PA 18201 | : | |
| | : | |
|     And | : | No. 3:17-cv-00837-RDM |
| | : | |
| **ALBERTO FRANCISCO GRUYAIR** | : | |
| 776 Lincoln Street | : | |
| Hazelton, PA 18201 | : | |
| | : | |
|     And | : | **JURY TRIAL DEMANDED** |
| | : | |
| **FRANCISCO ALBERTO GRUYAIR** | : | |
| 776 Lincoln Street | : | |
| Hazelton, PA 18201 | : | |
| | : | |
|     And | : | |
| | : | |
| **FRANCISCA SANCHEZ** | : | |
| 776 Lincoln Street | : | |
| Hazelton, PA 18201 | : | |
| | : | |
|     And | : | |
| | : | |
| **RAMON MEJIA** | : | |
| 2200 Grand Avenue, Apt. 5G | : | |
| Bronx, NY 10453 | : | |
| | : | |
|     And | : | |
| | : | |
| **BELKYS LIMBAR** | : | |
| 539 Lafayette Court | : | |
| Hazleton, PA 18201 | : | |
| | : | |
|     And | : | |
| | : | |
| **PABLO JOAQUIN LIMBAR** | : | |
| 539 Lafayette Court | : | |
| Hazleton, PA 18201 | : | |
| | : | |
|     And | : | |
| | : | |

**NURIKA FELIX**                          :
539 Lafayette Court                        :
Hazleton, PA 18201                         :
                                      :
     And          :
                                      :
**DULCINEA REYES**                        :
                                      :
     And          :
                                      :
**ANEURY A. DIAZ**                        :
                                      :
     And          :
                                      :
**CHRISTINE REINOS DIAZ**                 :
                                      :
     And          :
                                      :
**ARIANO ESPINOSA**                       :
                                      :
     And          :
                                      :
**SEILY ABREU VAZQUEZ**                   :
                                      :
     And          :
                                      :
**MARIA CARMEN RAMOS**                    :
                                      :
     And          :
                                      :
**SIMON FANNA GRUYON**                    :
                                      :
     And          :
                                      :
**JESUS MARIA MENDEZ**                    :
                                      :
                Plaintiffs,   :
                                      :
       v.        :
                                      :
**IGNACIO BEATO**                         :
Luzerne County Jail                        :
99 Water Street                            :
Wilkes-Barre, PA 18702                     :
                                      :
     And          :

|                                           |   |
|-------------------------------------------|:--|
| **WEICHERT, REALTORS TRADEMARK**          | : |
| 1112 Memorial Highway                     | : |
| Shavertown, PA 18708                      | : |
|                                           | : |
| And                                       | : |
|                                           | : |
| **POGGI REALTORS, LLC.**                  | : |
| 1149 Wyoming Avenue                       | : |
| Forty Fort, PA 18704                      | : |
|                                           | : |
| And                                       | : |
|                                           | : |
| **GREATER HAZELTON ASSOCIATION OF REALTORS** | : |
| 32 West Broad Street                      | : |
| West Hazelton, PA, 18202                  | : |
|                                           | : |
| And                                       | : |
|                                           | : |
| **TOMA ABSTRACT, INC.**                   | : |
| 19 East Broad Street                      | : |
| Hazelton, PA 18201                        | : |
|                                           | : |
| Defendants.                               | : |

---

## FIRST AMENDED
## CIVIL ACTION COMPLAINT

### I.    PARTIES

1.    Plaintiff, Ramon Montes De Oca is an adult individual residing at the above-captioned address.

2.    Plaintiff, Alberto Francisco Gruyair ("A. F. Gruyair") is an adult individual residing at the above-captioned address.

3.    Plaintiff, Francisco Alberto Gruyair ("F. A. Gruyair") is an adult individual residing at the above-captioned address.

4.      Plaintiff, Francisca Sanchez is an adult individual residing at the above-captioned address.

5.      Plaintiff, Ramon Mejia is an adult individual residing at the above-captioned address.

6.      Plaintiff, Belkys Limbar is an adult individual residing at the above-captioned address.

7.      Plaintiff, Pablo Joaquin Limbar is an adult individual residing at the above-captioned address.

8.      Plaintiff, Nurika Felix is an adult individual residing at the above-captioned address.

9.      Plaintiff, Dulcinea Reyes is an adult individual.

10.     Plaintiff, Aneury A. Diaz ("A.A. Diaz") is an adult individual.

11.     Plaintiff, Chrstino R. Diaz ("C.R. Diaz") is an adult individual.

12.     Plaintiff, Ariano Espinosa is an adult individual.

13.     Plaintiff, Seily Abreu Vasquez is an adult individual.

14.     Plaintiff, Maria Carmen Ramos is an adult individual.

15.     Plaintiff, Simon Fanna Gruyon is an adult individual.

16.     Plaintiff, Jesus Maria Mendez is an adult individual.

17.     Defendant, Ignacio Beato is an adult individual residing at the above-captioned address.

18.     Defendant, Weichert, Realtors TradeMark is a corporation incorporated by virtue of and operating under the laws of the Commonwealth of Pennsylvania, having a principal place of business at the above-captioned address.

19.     Defendant, Poggi Realtors, LLC is a limited liability company incorporated by virtue of and operating under the laws of the Commonwealth of Pennsylvania, having a principal place of business at the above-captioned address.

20.     Defendant, Greater Hazelton Association of Realtors is a Pennsylvania Association, having a principal place of business at the above-captioned address.

21.     Defendant Toma Abstract, Inc. ("Toma") is a corporation incorporated by virtue of the laws of the Commonwealth of Pennsylvania, and having a principal place of business at the above captioned address.

## II.     JURISDICTION & VENUE

22.     Venue is proper in the in this District as the transactions and/or occurrences that give rise to the cause of action took place within this District

23.     This Honorable Court has jurisdiction over this action pursuance to Title 28, United States Code, Sections 1331 and 1337 as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. This Honorable Court has supplemental jurisdiction over the state law claims pursuant to Title 28, United States Code, Section 1367.

## III.     OPERATIVE FACTS

## DEFENDANTS CONSPIRACY

24.     Defendants, Ignacio Beato and Toma Abstract, Inc. did knowingly combine, conspire, and agree with other persons unknown to Plaintiffs to commit offenses against Plaintiffs: to knowingly engage and attempt to engage in monetary transactions by and through financial institutions, affecting interstate and foreign commerce, to intentionally, fraudulently, and criminally deprive Plaintiffs of their money, property, and financial security.

25.     As part of the conspiracy, Beato would identify properties in Hazleton, Pennsylvania and would falsely represent to potential purchasers of the properties that Beato was authorized to sell those properties, when in fact, Beato did not have such authority.

26.     Beato and his coconspirators, including Toma Abstract, Inc., would use cellular telephones to communicate with potential purchasers who were in Pennsylvania or in other states, including the State of New York, and would engage in interstate wire communications during which the Beato and his coconspirators, including Toma Abstract, Inc., falsely represented that Beato was authorized to sell the properties.

27.     Beato and his coconspirators, including Toma Abstract, Inc., would prepare and cause fraudulent written agreements of sale to be entered into which purported to convey properties to purchasers when, in fact Beato and his coconspirators, including Toma Abstract, Inc., had no authority to cause such agreements to be entered into.

28.     Beato would solicit and accept money from individuals who believed they were purchasing properties and Beato would fraudulently convert that money to his own personal use and to the use of his coconspirators, including Toma Abstract, Inc., by engaging in monetary transactions.

29.     As part of the conspiracy, Beato would direct those individuals who required additional assurance to Toma Abstract, Inc., which would falsely represent to individuals that Beato was authorized to sell the properties in question causing individuals to reasonably depend on Beato's false representations.

### DE OCA v. BEATO; WEICHERT, REALTORS TRADEMARK; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

30.     Sometime in early March 2015, Beato provided Plaintiff, Ramon Montes De Oca with a Weichert, Realtors TradeMark Business Card and discussed how he might find a suitable home for De Oca with Beato working as his agent.

31.     De Oca is Hispanic and speaks very little English.

32.     De Oca hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish, as well as trusting the Weichert, Realtors TradeMark brand.

33.     At all material times, De Oca believed that Beato was acting as an agent of Weichert, Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

34.     In early May 2015, Beato began working for Defendant, Poggi Realtors, LLC. However, Beato did not inform De Oca of Beato's change in brokerage.

35.     Beato advised De Oca that there was a foreclosed property available for him to purchase at 806 Grant Street in Hazelton, Pennsylvania, for the price of $25,000.

36.     De Oca, in reliance on Beato's statements that Beato was authorized to sell the 806 Grant Street Property, as well as knowing the Weichert, Realtors TradeMark brand, agreed to the purchase of the 806 Grant Street Property and on May 29, 2015, executed an Agreement of Sale which was prepared by Beato. Exhibit A

37.     On or about May 29, 2015, De Oca paid Beato $10,000.

38.     A few days later, De Oca paid Beato an additional $15,000 to cover the remaining balance on the 806 Grant Street Property.

39.     Beato advised De Oca that any irregularities De Oca might see on the paperwork was due to the fact that the 806 Grant Street Property was being purchased as a foreclosure and process is different than the sale of a non-foreclosed property and to ignore any irregularities.

40.     Beato then promised De Oca that he would provide the key and deed to the 806 Grant Street Property within a few days.

41.     However, at no point did Beato provide either the deed or keys to the 806 Grant Street Property to De Oca.

42.     After several months, De Oca learned that the Beato had fled the country to his home in the Dominican Republic.

43.     But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, De Oca would not have trusted Beato with $25,000 and would not have paid him this amount directly.

44.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

45.     As a direct and proximate result of the above actions, De Oca suffered damages which include but are not limited to the loss of his deposit monies.

### A.F. GRUYAIR v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

46.     On or about April 15, 2015, Beato met with Plaintiff, A. F. Gruyair to discuss the purchase of a new home with Beato working as his agent.

47.     A. F. Gruyair is Hispanic, speaks very little English, and was a first-time home buyer.

48.     A. F. Gruyair hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

49.     Beato informed A. F. Gruyair that he worked for Poggi Realtors, LLC and that he would be able to locate A. F. Gruyair a nice home.

50.     In early May 2015, Beato met with A. F. Gruyair again and advised him that there was a property available for him to purchase at 417 East Beech Street in Hazelton, Pennsylvania for the price of $38,000.

51.     A. F. Gruyair in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, agreed to the purchase the 417 East Beech Street Property. On May 29, 2015, A. F. Gruyair executed an Agreement of Sale and what appeared to be a HUD-1 Settlement Statement. Exhibit B.

52.     A. F. Gruyair provided Beato with a check for $38,000, the full purchase price of the 417 East Beech Street Property. In exchange, Beato provided the keys to the 417 East Beech Street Property and A. F. Gruyair took possession of the 417 East Beech Street Property.

53.     A few days later, A. F. Gruyair went to Toma Abstract, Inc. to acquire the deed to the 417 East Beech Street Property as directed by Beato.

54.     A female agent of Toma Abstract, Inc. by the name of "Noelkeys" advised A. F. Gruyair that the deed would be ready in a few days and confirmed that Beato had the authority to sell the 417 East Beech Street Property to him.

55.     After several months, Beato failed to provide the deed to the 417 East Beech Street Property. At no point did the A. F. Gruyair ever receive the deed to the 417 East Beech Street Property.

56.     After several months, A. F. Gruyair learned that Defendant Beato had fled the country to his home in the Dominican Republic.

57.     On or about March 14, 2016, an ejectment action was filed by the proper owners of the 417 East Beech Street Property and A. F. Gruyair was removed from the home.

58.     A. F. Gruyair was a first-time home buyer with no knowledge of how the home buying process worked.

59.     But for Beato association with Poggi Realtors, LLC, A. F. Gruyair would not have trusted Beato with $38,000 and would not have paid him this amount directly.

60.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

61.     As a direct and proximate result of the above actions, A. F. Gruyair suffered damages which include but are not limited to the loss of his deposit monies.

## F. A. GRUYAIR v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

62.     On April 15, 2015, Beato met with Plaintiff, F. A. Gruyair to discuss the purchase of a new home with Beato working as his agent.

63.     F. A. Gruyair is Hispanic, speaks very little English, and was a first-time home buyer.

64.     F. A. Gruyair hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

65.     Beato informed F. A. Gruyair that he worked for Poggi Realtors, LLC and that he would be able to locate F. A. Gruyair a nice home.

66.     In Early May 2015, Beato again met with F. A. Gruyair and advised him that there was a property available for him to purchase at 2440 Venisa Drive in Hazelton, Pennsylvania for the price of $238,000.

67.     A. F. Gruyair, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, executed an Agreement of Sale and gave Beato cash in the amount of $30,000 for the deposit on the 2440 Venisa Drive Property. Exhibit C.

68.     Beato provided F. A. Gruyair the keys to the 2440 Venisa Drive Property approximately two (2) days prior to the settlement.

69.     F. A. Gruyair then moved his clothing and furniture into the 2440 Venisa Drive Property. However, the Seller's realtor objected and F. A. Gruyair was forced to remove his things from the 2440 Venisa Drive Property.

70.     At the scheduled settlement, Beato failed to appear, along with the $30,000 deposit that F. A. Gruyair had given to Beato. As a result, the Settlement did not occur and the Agreement for Sale was void.

71.     Beato never returned F. A. Gruyair's $30,000 deposit.

72.     Beato then had a conference call with Edmund Poggi, Principal of Poggi Realtors, LLC, who admitted that Beato was his agent and/or employee and he would do whatever he needed to resolve the situation. However, Poggi Realtors, LLC did not compensate F. A. Gruyair for his loss.

73.     F. A. Gruyair was a first-time home buyer with no knowledge of how the home buying process worked.

74.     But for Beato's association with Poggi Realtors, LLC, F.A. Gruyair would not have trusted Beato with the $30,000 deposit and would not have paid him this amount directly.

75.     But for the actions of Beato and inactions of Poggi Realtors, LLC, F.A. Gruyair would not paid Beato $30,000 in an attempt to purchase the 2440 Venisa Drive Property.

76.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

77.     As a direct and proximate result of the above actions, A. F. Gruyair suffered damages which include but are not limited to the loss of his deposit monies.

## SANCHEZ v. BEATO; WEICHERT, REALTORS TRADEMARK; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

78.     In or around March 2015, Beato met with Plaintiff, Francisca Sanchez to discuss the

purchase of a new home with Beato working as her agent.

79.     Sanchez is Hispanic, speaks very little English, and was a first time home buyer.

80.     Sanchez hired Beato due to his reputation within the Hispanic community and his ability

to communicate with her in Spanish, well as trusting the Weichert, Realtors TradeMark  brand.

81.     At all material times, Sanchez believed that Beato was acting as an agent of Weichert,

Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate

agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

82.     In early May 2015, Beato began working for Poggi Realtors, LLC. However, Beato did

not inform Sanchez of Beato's change in brokerage.

83.     Beato advised Sanchez that there was a property available for her to purchase at 216

Wilson Drive in Hazelton, Pennsylvania for the price of $45,000.

84.     Sanchez, in reliance on Beato's statements agreed to the purchase of the 216 Wilson

Drive Property and executed an Agreement of Sale. Exhibit D.

85.     Sanchez provided Beato with a check in the full amount of $45,000 for the purchase price

of the Property.

86.     Despite paying the full price, Beato did not provide the keys or the deed for Sanchez to

take possession of the 216 Wilson Drive Property.

87.     Instead, Beato told Sanchez that he had located her a better house on nearby Locust

Street, which would only cost her an additional $10,000.

88.     At this time, Sanchez and her son Francisco went to Toma Abstract, Inc.'s offices at the

request of Beato to verify his authority to sell the properties they had been discussing.

89.     Two female employees and/or agents of Toma Abstract, Inc., one believed to be known as the name of "Noelkeys", verified that Beato was "legitimate" and had the authority to sell these aforementioned properties.

90.     After speaking with Toma Abstract, Inc.'s employees and/or agents, Sanchez agreed to purchase the Locust Street Property. However, Beato then advised Sanchez that the Locust Street Property was unavailable.

91.     Beato then mentioned a new property located at 514 West Third Street, Hazelton, Pennsylvania.

92.     Sanchez, depending on the representations of the two employees and/or agents of Toma Abstract, Inc., agreed to purchase the 514 West Third Street Property and paid Beato an additional $10,000 to purchase the home.

93.     Beato then provided Sanchez a "recorded deed" for the 514 West Third Street Property, which Sanchez believed signified her ownership in the home.

94.     Sanchez, after moving family members into the home, was then contacted by the rightful owners to the 514 West Third Street Property, who informed Sanchez that she was improperly occupying the 514 West Third Street Property.

95.     On or about August 16, 2016, an ejectment action was filed by the proper owners of the 514 West Third Street Property and Sanchez was removed from the home.

96.     Sanchez was a first-time home buyer with no knowledge of how the home buying process worked.

97.     But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, Sanchez would not have initially trusted Beato with $45,000 and would not have paid him this amount directly.

98.     But for the representations of Toma Abstract, Inc. agents and/or employees, Sanchez would not have trusted Beato with an additional $10,000 and would not have paid him this amount directly.

99.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

100.    As a direct and proximate result of the above actions, Sanchez suffered damages which include but are not limited to the loss of his deposit monies.

## MEJIA v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

101.    In May 2015, Beato met with Plaintiff, Ramon Mejia to discuss two properties he wished to purchase with Beato acting as his real estate agent.

102.    Mejia is Hispanic, speaks very little English, does not read any English, and was a first-time home buyer.

103.    Mejia hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

104.    Beato advised Mejia that he worked for Poggi Realtors, LLC and he could help him purchase a home at a very low price.

105.    After meeting with Beato, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, Mejia decided to purchase properties located 638 North Lincoln Street and 901 East Diamond Avenue, both located in Hazelton, Pennsylvania.

106.    Mejia agreed to pay $30,000 for the 638 North Lincoln Street Property and $50,000 for the 901 East Diamond Avenue Property. Mejia immediately paid Beato $2,000 as a deposit on the properties.

107.     On or about June 12, 2015, Mejia executed the Agreement of Sale. Unbeknownst to Mejia, who does not read English, Beato intentionally and fraudulently increased the purchase prices for the properties; changing the 638 North Lincoln Street Property price from $30,000 to $68,500 and the 901 East Diamond Avenue Property price from $50,000 to $78,800.

108.     Following the execution, Mejia forced Beato to provide him the escalated total of $147,300.

109.     However, Beato did not provide Mejia the keys or deeds to the 638 North Lincoln Street and 901 East Diamond Avenue Properties.

110.     After attempting to contact Beato to resolve the situation for several months, Mejia learned that Beato had fled the country to his home in the Dominican Republic.

111.     But for Beato's association with Poggi Realtors, LLC, Mejia would not have trusted Beato with the $147,300 deposit and would not have paid him this amount directly.

112.     But for the actions of Beato and inactions of Poggi Realtors, LLC, Mejia would not paid Beato $147,300 in an attempt to purchase the 638 North Lincoln Street and 901 East Diamond Avenue Properties.

113.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

114.     As a direct and proximate result of the above actions, Mejia suffered damages which include but are not limited to the loss of his deposit monies.

### BELKYS LIMBAR, PABLO LIMBAR & NURIKA FELIX v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

115.     In June 2015, Beato met with Plaintiffs, Belkys Limbar, Pablo Limbar, and Nurika Felix to discuss buying a property in the area with Beato as their real estate agent.

116.    Belkys Limbar, Pablo Limbar, and Felix are Hispanic, speak very little English, and were all first-time home buyers.

117.    Belkys Limbar, Pablo Limbar, and Felix hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

118.    Beato advised Belkys Limbar, Pablo Limbar, and Felix that he worked for Poggi Realtors, LLC, had exclusive listings in the area, and could help them purchase a home at a very low price. Beato told them that for an initial $10,000 deposit, Beato could give them access to a list containing all the exclusive home listings he had.

119.    On or about June 8, 2015, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, Belky Limbar gave Beato $10,000 to gain access to the list. Exhibit E

120.    Beato advised Belkys Limbar, Pablo Limbar, and Felix that he could sell them a home located at 783 Peace Street in Hazleton, Pennsylvania and that they would just need to sign the Agreement of Sale and provide Beato with an additional $12,000.

121.    On or about June 10, 2015, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, Pablo Limbar provided Beato the additional $12,000.

122.    Upon arriving at the 783 Peace Street Property, Nurika Felix decided that she did not approve of the conditions of the 783 Peace Street Property and wanted to purchase a different house.

123.    Beato advised Belkys Limbar, Pablo Limbar, and Felix that since they paid him $22,000 already, they could simply go to another home and suggested a property located at 539 Lafayette Ct., Hazleton, Pennsylvania.

124.     On or about June 18, 2015, Pablo Limbar signed the paperwork for the 539 Lafayette Ct. Property. Exhibit F

125.     Upon arriving at the 539 Lafayette Ct. Property, Belkys Limbar, Pablo Limbar, and Felix were unable to access it.

126.     Belkys Limbar, Pablo Limbar, and Felix contacted Beato who informed them that he would only provide them with the key to the 539 Lafayette Ct. Property if they paid him an additional amount of money.

127.     Belkys Limbar, Pablo Limbar, and Felix refused to pay any additional money and demanded their money back.

128.     Beato advised that since the paperwork for the 783 Peace Street Property had already been signed and paid for, Belkys Limbar, Pablo Limbar, and Felix should accept the 783 Peace Street Property.

129.     Belkys Limbar, Pablo Limbar, and Felix relented and agreed to accept the 783 Peace Street Property in its condition.

130.     However, upon Belkys Limbar, Pablo Limbar, and Felix's return to 783 Peace Street Property, they were confronted by officers of non-party, Atlantic Financing.

131.     The Atlantic Financing officers informed Belkys Limbar, Pablo Limbar, and Felix that the 783 Peace Street Property had been foreclosed upon and would soon be sold at a foreclosure sale.

132.     Belkys Limbar, Pablo Limbar, and Felix attempted to contact Beato again but eventually learned that Beato had fled the country to his home in the Dominican Republic

133.     Belkys Limbar, Pablo Limbar, and Felix were a first-time home buyers with no knowledge of how the home buying process worked.

134.    But for Beato's association with Poggi Realtors, LLC, Belkys Limbar, Pablo Limbar, and Felix would not have trusted Beato with the $22,000 deposit and would not have paid him this amount directly.

135.    Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

136.    As a direct and proximate result of the above actions, Belkys Limbar, Pablo Limbar, and Felix suffered damages which include but are not limited to the loss of their deposit monies.

### A.A. DIAZ v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

137.    On or about June 25, 2015, Beato met with Plaintiff, A.A. Diaz to discuss the purchase of a property with Beato acting as his real estate agent.

138.    A.A. Diaz is Hispanic and speaks very little English.

139.    A.A. Diaz hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

140.    Beato advised A.A. Diaz that he worked for Poggi Realtors, LLC and he could help him purchase a home at a very low price.

141.    After meeting with Beato, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, A.A. Diaz decided to purchase a property located at 24 Coxe Street, Hazelton, Pennsylvania.

142.    A.A. Diaz paid $29,200 for the 24 Coxe Street Property.

143.    On or about June 25, 2015, A.A. Diaz executed the Agreement of Sale.

144.    However, A.A. Diaz later learned that Beato did not have authorization to sell the 24 Coxe Street Property to him.

145.     After attempting to contact Beato to resolve the situation for several months, A.A. Diaz learned that Beato had fled the country to his home in the Dominican Republic.

146.     But for the actions of Beato and inactions of Poggi Realtors, LLC, A.A. Diaz would not paid Beato $29,200 in an attempt to purchase the 24 Coxe Street Property.

147.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

148.     As a direct and proximate result of the above actions, A.A. Diaz suffered damages which include but are not limited to the loss of his deposit monies.

## C.R. DIAZ v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

149.     In or around May 2015, Beato met with Plaintiff, C.R. Diaz to discuss the purchase of a property with Beato acting as his real estate agent.

150.     C.R. Diaz is Hispanic and speaks very little English.

151.     C.R. Diaz hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

152.     Beato advised C.R. Diaz that he worked for Poggi Realtors, LLC and he could help him purchase a home at a very low price.

153.     After meeting with Beato, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, C.R. Diaz decided to purchase a property located at 1085 Alter Street, Hazelton, Pennsylvania.

154.     On or about June 10, 2015, C.R. Diaz paid $6,000 as a down payment for the 1085 Alter Street Property and executed a Sale of a Mobile/Manufactured Home, Real Property Not

Included Contract. The purchase price for the 1085 Alter Street Property per the contract was $27,000.

155. However, C.R. Diaz never received the deed or keys to the 1085 Alter Street Property.

156. After attempting to contact Beato to resolve the situation for several months, C.R. Diaz learned that Beato had fled the country to his home in the Dominican Republic.

157. But for the actions of Beato and inactions of Poggi Realtors, LLC, C.R. Diaz would not paid Beato $6,000 in an attempt to purchase the 1085 Alter Street Property.

158. Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

159. As a direct and proximate result of the above actions, C.R. Diaz suffered damages which include but are not limited to the loss of his deposit monies.

## ESPINOSA v. BEATO; WEICHERT, REALTORS TRADEMARK; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

160. In or around December 2014, Beato provided Plaintiff, Ariano Espinosa with a Weichert, Realtors TradeMark Business Card, and discussed how he might find a suitable home for Espinosa with Beato working as his agent.

161. Espinosa is Hispanic and speaks very little English.

162. Espinosa hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish, as well as trusting the Weichert, Realtors TradeMark brand.

163. On or about December 12, 2014, in reliance on Beato's statements that Beato would find a suitable property for purchase, as well as knowing the Weichert, Realtors TradeMark brand Espinosa provided Beato the sum of $30,000 for the future purchase of a property.

164.    At all material times, Espinosa believed that Beato was acting as an agent of Weichert, Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

165.    In early May 2015, Beato began working for Defendant, Poggi Realtors, LLC. However, Beato did not inform Espinosa of Beato's change in brokerage.

166.    In or around July 2015, Beato advised Espinosa that he located a suitable property for Espinosa, located at 216 Wilson Drive, Hazelton, Pennsylvania.

167.    Espinosa executed an Agreement of Sale and received a deed for the 216 Wilson Drive Property.

168.    However, Espinosa later learned from the Recorder of Deed of Luzerne County that the deed he was provided was fictitious and without any legal weight.

169.    After several months of attempting to contact Beato, Espinosa learned that the Beato had fled the country to his home in the Dominican Republic.

170.    But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, Espinosa would not have trusted Beato with $30,000 and would not have paid him this amount directly.

171.    Under the theories of agency, Weichert, Realtors TradeMark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the course of his employment.

172.    Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the course of his employment.

173.    As a direct and proximate result of the above actions, Espinosa suffered damages which include but are not limited to the loss of his deposit monies.

## RAMOS v. BEATO; WEICHERT, REALTORS TRADEMARK; & TOMMA ABSTRACT, INC.

174.    In or around August 2014, Beato met with Plaintiff, Maria Carmen Ramos discussed how he might find a suitable home for Ramos with Beato working as her agent.

175.    Ramos is Hispanic and speaks very little English.

176.    It is believed and therefore averred that Reyes was employed by and acting as an agent for Weichert, Realtors TradeMark at all material times.

177.    Espinosa hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish, as well as trusting the Weichert, Realtors TradeMark brand.

178.    At all material times, Espinosa believed that Beato was acting as an agent of Weichert, Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

179.    In or around August 2014, in reliance on Beato's statements that Beato would find a suitable property for purchase, as well as knowing the Weichert, Realtors TradeMark brand Ramos provided Beato the sum of $35,000 for the future purchase of a property.

180.    Beato communicated with Ramos concerning finding a suitable home through the Summer of 2015.

181.    However, after not hearing from Beato for several months, Ramos learned during the Fall of 2015 that Beato had fled the country to his home in the Dominican Republic and had been arrested upon his return.

182.     But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, Espinosa would not have trusted Beato with $30,000 and would not have paid him this amount directly.

183.     As a direct and proximate result of the above actions, Espinosa suffered damages which include but are not limited to the loss of his deposit monies.

### GRUYON v. BEATO; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.

184.     In or around May 2015, Beato met with Plaintiff, Simon Fanna Gruyon to discuss the purchase of a property with Beato acting as his real estate agent.

185.     Gruyon is Hispanic and speaks very little English.

186.     Gruyon hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish.

187.     Beato advised Gruyon that he worked for Poggi Realtors, LLC and he could help him purchase a home at a very low price.

188.     After meeting with Beato, Gruyon decided to purchase a property located at 35 Susquehanna Blvd., West Hazelton, Pennsylvania.

189.     On or about June 16, 2015, in reliance on Beato's statements and knowledge that he worked for Poggi Realtors, LLC, Gruyon paid $10,000 for the 35 Susquehanna Blvd. Property and executed an Agreement of Sale.

190.     Beato provided Gruyon a deed for the 35 Susquehanna Blvd. Property; however, Gruyon later learned that the deed was fictitious and that Beato did not have the authority to sell the 35 Susquehanna Blvd. Property.

191.     Gruyon incurred approximately $7,500 in relocation expenses when he was forced to relocate as a result.

192.     After attempting to contact Beato to resolve the situation for several months, Gruyon learned that Beato had fled the country to his home in the Dominican Republic.

193.     But for the actions of Beato and inactions of Poggi Realtors, LLC, Gruyon would not paid Beato $10,000 in an attempt to purchase the 35 Susquehanna Blvd. Property.

194.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

195.     As a direct and proximate result of the above actions, Gruyon suffered damages which include but are not limited to the loss of his deposit monies and cost to relocate.

## VASQUEZ v. BEATO; WEICHERT, REALTORS TRADEMARK; & TOMMA ABSTRACT, INC.

196.     In or around December 2014, provided Plaintiff, Seily Abreu Vasquez with a Weichert, Realtors TradeMark Business Card, and discussed how he might find a suitable home for the Plaintiff with Beato working as her agent.

197.     Vasquez is Hispanic and speaks very little English.

198.     Vasquez hired Beato due to his reputation within the Hispanic community and his ability to communicate with her in Spanish, as well as trusting the Weichert, Realtors TradeMark brand.

199.     Beato advised Vasquez that there was a property available for her to purchase 24 Coxe Street in Hazelton, Pennsylvania for the price of $15,000.

200.     Vasquez, in reliance on Beato's statements that Beato was authorized to sell the 24 Coxe Street Property, as well as knowing the Weichert, Realtors TradeMark brand, agreed to the purchase of the 24 Coxe Street Property.

201.    On or about January 27, 2015, Vasquez executed an Agreement of Sale which was prepared for the purchase of the 24 Coxe Street Property.

202.    On or about January 27, 2015, Vasquez paid Beato the amount of $15,000.

203.    Beato then promised Vasquez that he would provide the deed to the 24 Coxe Street Property within a few weeks.

204.    However, at no point did Beato provide either the deed to the 24 Coxe Street Property.

205.    Vasquez expended approximately $55,000 on renovating the home.

206.    After several months, Vasquez learned that the Beato had fled the country to his home in the Dominican Republic and was arrested upon his return.

207.    Vasquez then learned that Beato did not have the authority to sell her the 24 Coxe Street Property.

208.    But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, Vasquez would not have trusted Beato with $15,000 and would not have paid him this amount directly.

209.    But for Beato representation's, Vasquez would not have expended approximately $55,000 renovating the 24 Coxe Street Property.

210.    Under the theories of agency, Weichert, Realtors TradeMark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

211.    As a direct and proximate result of the above actions, Vasquez suffered damages which include but are not limited to the loss of her purchase and renovation monies.

## <u>MENDEZ v. BEATO; WEICHERT, REALTORS TRADEMARK; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.</u>

212.     During August 2014, Beato met with Plaintiff, Jesus Maria Mendez to discuss buying a property in the area with Beato as his real estate agent.

213.     Mendez is Hispanic and speaks very little English.

214.     Mendez hired Beato because Beato had served as his real estate agent successfully approximately five years earlier.

215.     Beato advised Mendez that he worked for Weichert, Realtors TradeMark could help him purchase a new home at a low price.

216.     In or around September 2014, Mendez provided Beato $19,000, in the form of a check, to purchase a property located at 1056 N. Locust Street, Hazelton, Pennsylvania.

217.     However, Beato told Mendez that the sale fell through and that there was a "problem with the bank" returning the $19,000.

218.     After several months, Beato again told Mendez that there were "ongoing problems with the bank" returning the $19,000.

219.     At all material times, Mendez believed that Beato was acting as an agent of Weichert, Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

220.     In early May 2015, Beato began working for Defendant, Poggi Realtors, LLC. However, Beato did not inform Mendez of Beato's change in brokerage.

221.     In or around May 2015, Beato told Mendez that he found a new property that Mendez should purchase, located at 1031 N. Locust Street, Hazelton, Pennsylvania.

222.     However, Beato told Mendez the property would cost $40,000 in total and that Mendez could pay Beato the remaining $21,000 in installments.

223.     On or about May 29, 2015, Mendez and his wife moved into the 1031 N. Locust Street Property.

224.     However, Mendez was unable to switch the water utility into his name and during the first week of August 2015, the Hazelton City Water Department shut off the water to 1031 N. Locust Street Property.

225.     The following week, Mendez learned that the account for the 1031 N. Locust Street Property was in someone else's name and he could not obtain water.

226.     After several months of attempting to contact Beato, Mendez learned that the Beato had fled the country to his home in the Dominican Republic.

227.     Under the theories of agency, Weichert, Realtors TradeMark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the time of his employment with Weichert, Realtors TradeMark.

228.     Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the time of his employment with Poggi Realtors LLC.

229.     As a direct and proximate result of the above actions, Vasquez suffered damages which include but are not limited to the loss of her purchase monies.

**ESPINOSA v. BEATO; WEICHERT, REALTORS TRADEMARK; POGGI REALTORS, LLC; & TOMMA ABSTRACT, INC.**

230.     In or around December 2014, Beato provided Plaintiff, Ariano Espinosa with a Weichert, Realtors TradeMark Business Card, and discussed how he might find a suitable home for Espinosa with Beato working as his agent.

231.     Espinosa is Hispanic and speaks very little English.

232.    Espinosa hired Beato due to his reputation within the Hispanic community and his ability to communicate with him in Spanish, as well as trusting the Weichert, Realtors TradeMark brand.

233.    On or about December 12, 2014, in reliance on Beato's statements that Beato would find a suitable property for purchase, as well as knowing the Weichert, Realtors TradeMark brand Espinosa provided Beato the sum of $30,000 for the future purchase of a property.

234.    At all material times, Espinosa believed that Beato was acting as an agent of Weichert, Realtors TradeMark due to Weichert, Realtors TradeMark employment of Beato as a real estate agent and Weichert, Realtors TradeMark issuing Beato a business card identifying Beato as such.

235.    In early May 2015, Beato began working for Defendant, Poggi Realtors, LLC. However, Beato did not inform Espinosa of Beato's change in brokerage.

236.    In or around July 2015, Beato advised Espinosa that he located a suitable property for Espinosa, located at 216 Wilson Drive, Hazelton, Pennsylvania.

237.    Espinosa executed an Agreement of Sale and received a deed for the 216 Wilson Drive Property.

238.    However, Espinosa later learned from the Recorder of Deed of Luzerne County that the deed he was provided was fictitious and without any legal weight.

239.    After several months of attempting to contact Beato, Espinosa learned that the Beato had fled the country to his home in the Dominican Republic.

240.    But for Beato possessing Weichert, Realtors TradeMark business card with Beato identified by Weichert, Realtors TradeMark as a licensed real estate agent, Espinosa would not have trusted Beato with $30,000 and would not have paid him this amount directly.

241.    Under the theories of agency, Weichert, Realtors TradeMark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the time of his employment with Weichert, Realtors TradeMark.

242.    Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent during the time of his employment with Poggi Realtors LLC.

243.    As a direct and proximate result of the above actions, Espinosa suffered damages which include but are not limited to the loss of his deposit monies.

## REYES v. BEATO; WEICHERT, REALTORS TRADEMARK; & TOMMA ABSTRACT, INC.

244.    In or around Spring 2014, Plaintiff, Dulcinea Reyes met with Beato to discuss the rental of two properties located at 332 W. Spruce Street, Hazelton, Pennsylvania and 133 W. Cranberry Avenue, Hazelton, Pennsylvania with Beato as Reyes' real estate agent.

245.    Reyes informed Beato that she had purchased the properties in order to obtain investment income.

246.    At all material times, Reyes authorized Beato only to rent out the 332 W. Spruce Street and 133 W. Cranberry Avenue Properties; selling the properties was never discussed.

247.    Reyes is Hispanic and speaks little English.

248.    In or around June 2014, Beato sold the 332 W. Spruce Street Property for approximately $40,000 without Reyes authorization or consent.

249.    In or around June 2014, Beato sold the 133 W. Cranberry Avenue Property for approximately $90,000 without Reyes authorization or consent.

250.   Beato never inform Reyes that he had sold the 332 W. Spruce Street and 133 W. Cranberry Avenue Properties, nor did he provide Reyes any of the proceeds.

251.   The 332 W. Spruce Street and 133 W. Cranberry Avenue Properties current market value is approximately $389,000.

252.   After attempting to contact Beato for many months to learn the status of the properties, Reyes learned that Beato had fled the country to his home in the Dominican Republic.

253.   It is believed and therefore averred that Reyes was employed by and acting as an agent for Weichert, Realtors TradeMark at all material times.

254.   Under the theories of agency, Weichert, Realtors TradeMark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

255.   As a direct and proximate result of the above actions, Reyes suffered damages which include but are not limited to the loss of her 332 W. Spruce Street and 133 W. Cranberry Avenue Properties and the future rental income produced therefrom.

256.   On or about November 4, 2015, Beato was arrested upon his re-entry into the United States by Federal Authorities.

## IV.   COUNTS OF ACTION

### COUNT I
### Federal & Pennsylvania Civil RICO
*Plaintiffs v. Beato & Toma Abstract, Inc.*

257.   The foregoing paragraphs are incorporated herein as though set forth at length.

258.   Plaintiffs and Defendants, Beato and Toma Abstract, Inc. are "persons" within the meaning of 18 U.S.C. §1961(3).

259.    Defendants, Beato and Toma Abstract, Inc. collectively and/or individually, and/or including and by and through others, constitute an association in fact enterprise within the meaning of 18 U.S.C. §1961(4).

260.    Defendants, Beato and Toma Abstract, Inc., through their agents, servants, workmen and employees, in their statements, conversations, and advertising between Defendants, among other conduct and including between other persons, utilizing the internet, mail, telephone wires, and facsimile transmittals through the telephone wires, constitute violations of the Federal Mail and Wire Fraud Statutes, 18 U.S.C.  §1341 and §1343, in that they make use of the United States interstate mail and wires in furtherance of a scheme to defraud, and contain numerous false statements as alleged herein.

261.    The aforesaid scheme to defraud specifically included, but was not limited to, Defendants collectively and/or individually inducing individuals to enter into financial agreements as described herein, then demanding payment to which Defendants were not entitled, and by fraudulently misrepresenting Defendants had authority to enter into the financial agreements to Plaintiffs' financial detriment and Defendants' financial gain.

262.    Defendants have committed more than two (2) predicate acts of racketeering activity, as defined by 18 U.S.C. §1961(1), thereby constituting a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5).

263.    Defendants predicate acts include but are not limited to the following:

    a.  Defendants mailed Plaintiffs documents concerning the agreement in order to induce them to enter into the agreement; 18 U.S.C. § 1961(1); and,

    b.  Defendants engaged in telephone conversations with Plaintiffs the agreement in order to induce them to enter into the agreement; 18 U.S.C. § 1961(1).

264.    The Defendants' Enterprise is engaged in or affects interstate commerce.

## COUNT II
**Fraud / Fraudulent Misrepresentations**

*De Oca, Sanchez, A. F. Gruyair, F.A. Gruyair, Belkys Limbar, Pablo Limbar, Felix, Mejia, A.A.*
*Diaz, C.R. Diaz, Espinosa, Gruyon, & Mendez v. Beato & Poggi Realtors LLC*

265.    The foregoing paragraphs are incorporated herein as though set forth at length.

266.    Beato's intentional and fraudulent misrepresentations included knowing that he did not

have authorization, authority, or any legal standing to sell the Properties, nor had any intention to

legally sell the Properties to Plaintiffs.

267.    Beato intentionally and fraudulently mislead Plaintiffs into believing aforesaid intentional

and fraudulent misrepresentations.

268.    The aforesaid intentional and fraudulent misrepresentations were made in an attempt to

procure pecuniary gain, i.e. the deposit monies, from Plaintiffs.

269.    As the intended result of the aforesaid, Plaintiffs reasonably relied upon said

misrepresentations to their detriment.

270.    At all times material, Plaintiffs justifiably and detrimentally relied upon the material

intentional and fraudulent misrepresentations of Beato.

271.    Beato was a licensed real estate agent operating under Poggi Realtors LLC.

272.    Beato's actions, i.e. selling properties, was the specific actions that Poggi Realtors LLC

employed Beato to perform.

273.    Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious,

intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a

licensed real estate agent.

274.    It is well settled law in Pennsylvania that a master – Poggi Realtors LLC – is liable to

innocent third parties for the frauds, deceits, concealments, misrepresentations, torts,

negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the course of his employment, although the master did not authorize, justify or participate in, or indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

275.    As the direct and proximate result of the aforesaid, Plaintiff sustained the aforesaid damages, i.e. the loss of their deposit monies.

**<u>COUNT III</u>**
**Violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law**
*De Oca, Sanchez, A. F. Gruyair, F.A. Gruyair, Belkys Limbar, Pablo Limbar, Felix, Mejia, A.A. Diaz, C.R. Diaz, Espinosa, Gruyon, & Mendez v. Beato & Poggi Realtors LLC*

276.    The foregoing paragraphs are incorporated herein as though set forth at length.

277.    At all times material, Plaintiff and Defendants, Beato & Poggi Realtors LLC are "persons" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. (hereinafter "UTPCPL").

278.    The conduct of Defendants, Beato & Poggi Realtors LLC constituted an "unfair or deceptive act or practice" within the meaning of the UTPCPL.

279.    Defendants, Beato & Poggi Realtors LLC's conduct surrounding the sale of the properties falls within the aforementioned definitions of "unfair and deceptive acts or practices." Specifically, Beato & Poggi Realtors LLC's unfair and deceptive acts or practices include:

    a.    Passing off goods… as those of another;

    b.    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

    c.    Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

    d.    Representing …. That a person has a sponsorship, approval, status, affiliation, or connection that he does not have; and,

> e.  Engaging in any other fraudulent or deceptive conduct, which creates a likelihood of confusion or of misunderstanding.

280.  As the direct and proximate result of the aforesaid unfair or deceptive acts and/or practices, Plaintiffs sustained the aforesaid damages, i.e. the loss of their deposit monies.

281.  Beato was a licensed real estate agent operating under Poggi Realtors LLC.

282.  Beato's actions, i.e. selling properties, was the specific actions that Poggi Realtors LLC employed Beato to perform.

283.  Under the theories of agency, Poggi Realtors LLC, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

284.  It is well settled law in Pennsylvania that a master – Poggi Realtors LLC – is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the course of his employment, although the master did not authorize, justify or participate in, or indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

285.  The UTPCPL authorizes this Honorable Court, in its discretion, to award up to three (3) times ("treble") the actual damages sustained for violations of the UTPCPL for which relief Plaintiffs are entitled in full.

## COUNT IV
### Negligence / Negligent Hiring, Retention, & Supervision
*De Oca, Sanchez, A. F. Gruyair, F.A. Gruyair, Belkys Limbar, Pablo Limbar, Felix, Mejia, A.A. Diaz, C.R. Diaz, Espinosa, Gruyon, & Mendez v. Poggi Realtors LLC*

286.  The foregoing paragraphs are incorporated herein as though set forth at length.

287.  Poggi Realtors LLC owed Plaintiffs a general duty not to cause them harm.

288.     Poggi Realtors LLC failed to exercise reasonable care in the selection and retention of Beato.

289.     Poggi Realtors LLC failed to exercise reasonable care in the supervision of Beato.

290.     Poggi Realtors LLC knew or should have known that Beato was intentionally and fraudulently selling properties he did not have authorization or authority to sell.

291.     Poggi Realtors LLC knew or should have known that Beato was drafting fraudulent agreement of sales in furtherance of his conspiracy to defraud Plaintiffs.

292.     As a result of Beato's employment with Poggi Realtors LLC, Plaintiffs trusted Beato to their financial detriment.

293.     As the direct and proximate result of the aforesaid, Plaintiffs sustained the aforesaid damages, i.e. the loss of their deposit monies.

**COUNT V**
**Fraud / Fraudulent Misrepresentations**
*Ramos, Espinosa, Vasquez, & Mendez v. Beato & Weichert, Realtors Trademark*

294.     The foregoing paragraphs are incorporated herein as though set forth at length.

295.     Beato's intentional and fraudulent misrepresentations included knowing that he would not sell Plaintiffs any property.

296.     Beato intentionally and fraudulently mislead Plaintiffs into believing that Beato would later find and provide properties to Plaintiffs in exchange for the payment.

297.     The aforesaid intentional and fraudulent misrepresentations were made in an attempt to procure pecuniary gain, i.e. the deposit monies, from the Plaintiffs.

298.     As the intended result of the aforesaid, Plaintiffs reasonably relied upon said misrepresentations to their detriment.

299.    At all times material, Plaintiffs justifiably and detrimentally relied upon the material intentional and fraudulent misrepresentations of Beato.

300.    Beato was a licensed real estate agent operating under Weichert, Realtors Trademark.

301.    Beato's actions, i.e. selling properties, was the specific actions that Weichert, Realtors Trademark employed Beato to perform.

302.    Under the theories of agency, Weichert, Realtors Trademark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

303.    It is well settled law in Pennsylvania that a master – Weichert, Realtors Trademark – is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the course of his employment, although the master did not authorize, justify or participate in, or indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

304.    As the direct and proximate result of the aforesaid, Plaintiff sustained the aforesaid damages, i.e. the loss of their deposit monies.

## <u>COUNT VI</u>
**Violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law**
*Ramos, Espinosa, Vasquez, & Mendez v. Beato & Weichert, Realtors Trademark*

305.    The foregoing paragraphs are incorporated herein as though set forth at length.

306.    At all times material, Plaintiffs and Defendants, Beato & Weichert, Realtors Trademark are "persons" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. (hereinafter "UTPCPL").

307.    The conduct of Defendants, Beato & Weichert, Realtors Trademark constituted an "unfair or deceptive act or practice" within the meaning of the UTPCPL.

308.   Defendants, Beato & Weichert, Realtors Trademark's conduct surrounding the sale of the properties falls within the aforementioned definitions of "unfair and deceptive acts or practices." Specifically, Beato & Poggi Realtors LLC's unfair and deceptive acts or practices include:

a.   Engaging in any other fraudulent or deceptive conduct, which creates a likelihood of confusion or of misunderstanding.

309.   As the direct and proximate result of the aforesaid unfair or deceptive acts and/or practices, Plaintiffs sustained the aforesaid damages, i.e. the loss of their deposit monies.

310.   Beato was a licensed real estate agent operating under Weichert, Realtors Trademark.

311.   Beato's actions, i.e. selling properties, was the specific actions that Weichert, Realtors Trademark employed Beato to perform.

312.   Under the theories of agency, Weichert, Realtors Trademark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

313.   It is well settled law in Pennsylvania that a master – Weichert, Realtors Trademark – is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the course of his employment, although the master did not authorize, justify or participate in, or indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

314.   The UTPCPL authorizes this Honorable Court, in its discretion, to award up to three (3) times ("treble") the actual damages sustained for violations of the UTPCPL for which relief Plaintiffs are entitled in full.

## COUNT VII
### Negligence / Negligent Supervision / Negligent Misrepresentation
*De Oca, Sanchez, Reyes, Espinosa, Vasquez, & Ramos v. Weichert, Realtors Trademark*

315.    The foregoing paragraphs are incorporated herein as though set forth at length.

316.    Weichert, Realtors Trademark owed Plaintiffs a general duty not to cause them harm.

317.    Weichert, Realtors Trademark failed to exercise reasonable care in the selection and retention of Beato.

318.    Weichert, Realtors Trademark failed to exercise reasonable care in the supervision of Beato.

319.    Weichert, Realtors Trademark knew or should have known that Beato was intentionally and fraudulently selling properties he did not have authorization or authority to sell under the umbrella of Weichert, Realtors Trademark.

320.    Weichert, Realtors Trademark knew or should have known that Beato represented to Plaintiffs that he was an agent of Weichert, Realtors Trademark.

321.    Weichert, Realtors Trademark knew or should have known that Beato was drafting fraudulent agreement of sales in furtherance of his conspiracy to defraud Plaintiffs.

322.    As a result of Beato's employment with Weichert, Realtors Trademark, Plaintiffs trusted Beato to their financial detriment.

323.    As the direct and proximate result of the aforesaid, Plaintiffs sustained the aforesaid damages.

## COUNT VIII
### Fraud / Fraudulent Misrepresentations
*Sanchez v. Toma Abstract, Inc.*

324.    The foregoing paragraphs are incorporated herein as though set forth at length.

325.     Toma Abstract, Inc.'s intentional and fraudulent misrepresentations included knowing that Beato did not have authorization, authority, or any legal standing to sell the 216 Wilson Drive and Locust Street Properties.

326.     Toma Abstract, Inc. intentionally and fraudulently mislead Sanchez into believing that Beato had the authorization, authority, or other legal standing to sell the 216 Wilson Drive and Locust Street Properties.

327.     The aforesaid intentional and fraudulent misrepresentations were made in an attempt to procure pecuniary gain, i.e. the deposit monies, from Sanchez.

328.     As the intended result of the aforesaid, Sanchez reasonably relied upon said misrepresentations to her detriment.

329.     At all times material, Sanchez justifiably and detrimentally relied upon the material intentional and fraudulent misrepresentations of Toma Abstract, Inc..

330.     As the direct and proximate result of the aforesaid, Sanchez sustained the aforesaid damages, i.e. the loss of their deposit monies.

## COUNT IX
### Negligence / Negligent Misrepresentations
*Sanchez v. Toma Abstract, Inc.*

331.     The foregoing paragraphs are incorporated herein as though set forth at length.

332.     Toma Abstract, Inc.'s negligent misrepresentation included knowing that Beato did not have authorization, authority, or any legal standing to sell the 216 Wilson Drive and Locust Street Properties.

333.     Toma Abstract, Inc. negligently misled Sanchez into believing that Beato had the authorization, authority, or other legal standing to sell the 216 Wilson Drive and Locust Street Properties.

334.    At all times material, Sanchez justifiably and detrimentally relied upon the material

negligent misrepresentations of Toma Abstract, Inc.

335.    As the direct and proximate result of the aforesaid, Sanchez sustained the aforesaid

damages, i.e. the loss of their deposit monies.

## COUNT X
### Negligence
*Plaintiffs v. Greater Hazelton Association of Realtors*

336.    The foregoing paragraphs are incorporated herein as though set forth at length.

337.    Greater Hazelton Association of Realtors owed Plaintiffs a general duty not to cause

them harm.

338.    It is believed and therefore averred that the purpose for Greater Hazelton Association of

Realtors is to promote the professional, ethical, and profitable practice of real estate sales, as well

as protect property rights and facilitate a consistent and reliable marketplace.

339.    It is believed and therefore averred that to further that mission, Greater Hazelton

Association of Realtors is responsible for making sure that its licensed Realtors are acting in

furtherance of that mission.

340.    It is believed and therefore averred that Greater Hazelton Association of Realtors handles

any ethical complaints with regard to its members.

341.    It is believed and therefore averred that Beato, as a licensed Realtor in Hazelton, was a

member of the Greater Hazelton Association of Realtors.

342.    It is believed and therefore averred that Greater Hazelton Association of Realtors

received several complaints regarding the unfair, unethical, fraudulent, deceptive, and intentional

acts and/or practices of Beato.

343.     The aforementioned damages were caused in part by the negligence of Greater Hazelton Association of Realtors in failing to take any disciplinary action against Beato after being made aware of multiple unethical practices by Beato with regard to the sale and purchase of real estate.

## COUNT XI
### Conversion
*Reyes v. Beato & Weichert, Realtors Trademark*

344.     The foregoing paragraphs are incorporated herein as though set forth at length.

345.     Plaintiff, Reyes lawfully owned and/or possessed 332 W. Spruce Street and 133 W. Cranberry Avenue Properties.

346.     Defendants, Beato and Weichert, Realtors Trademark intentionally and substantially interfered and sold Plaintiff's lawfully owned and/or possessed properties, by taking possession of the Properties and selling the properties to third parties without authorization or consent.

347.     Plaintiff did not consent to the interference with their lawfully owned and/or possessed Properties.

348.     Plaintiff suffered significant financial harm due to Defendants' actions.

## COUNT XII
### Fraud / Fraudulent Misrepresentations
*Reyes v. Beato & Weichert, Realtors Trademark*

349.     The foregoing paragraphs are incorporated herein as though set forth at length.

350.     Beato's intentional and fraudulent misrepresentations included knowing that he did not have authorization, authority, or any legal standing to sell the 332 W. Spruce Street and 133 W. Cranberry Avenue Properties.

351.     Beato intentionally and fraudulently mislead Plaintiff, Reyes into believing that Beato would rent the 332 W. Spruce Street and 133 W. Cranberry Avenue Properties on her behalf.

352.   The aforesaid intentional and fraudulent misrepresentations were made in an attempt to procure pecuniary gain, i.e. the Properties, from Reyes.

353.   As the intended result of the aforesaid, Reyes reasonably relied upon said misrepresentations to her detriment.

354.   At all times material, Reyes justifiably and detrimentally relied upon the material intentional and fraudulent misrepresentations of Beato.

355.   Beato was a licensed real estate agent operating under Weichert, Realtors Trademark at all material times to this Plaintiff.

356.   Beato's actions, i.e. selling properties, was the specific actions that Weichert, Realtors Trademark employed Beato to perform.

357.   Under the theories of agency, Weichert, Realtors Trademark, as master, is liable for the tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work as a licensed real estate agent.

358.   It is well settled law in Pennsylvania that a master – Weichert, Realtors Trademark – is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the course of his employment, although the master did not authorize, justify or participate in, or indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

359.   As the direct and proximate result of the aforesaid, Plaintiff sustained the aforesaid damages, i.e. the loss of her 332 W. Spruce Street and 133 W. Cranberry Avenue Properties and investment income.

**<u>COUNT XIII</u>**
**Violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law**
*Reyes v. Beato & Weichert, Realtors Trademark*

360.    The foregoing paragraphs are incorporated herein as though set forth at length.

361.    At all times material, Plaintiff and Defendants, Beato & Weichert, Realtors Trademark are "persons" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. (hereinafter "UTPCPL").

362.    The conduct of Defendants, Beato & Weichert, Realtors Trademark constituted an "unfair or deceptive act or practice" within the meaning of the UTPCPL.

363.    Defendants, Beato & Weichert, Realtors Trademark's conduct surrounding the sale of the properties falls within the aforementioned definitions of "unfair and deceptive acts or practices." Specifically, Beato & Poggi Realtors LLC's unfair and deceptive acts or practices include:

    a.  Passing off goods… as those of another;

    b.  Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

    c.  Representing …. That a person has a sponsorship, approval, status, affiliation, or connection that he does not have; and,

    d.  Engaging in any other fraudulent or deceptive conduct, which creates a likelihood of confusion or of misunderstanding.

364.    As the direct and proximate result of the aforesaid unfair or deceptive acts and/or practices, Plaintiff, Reyes sustained the aforesaid damages, i.e. the loss of her 332 W. Spruce Street and 133 W. Cranberry Avenue Properties and investment income.

365.    Beato was a licensed real estate agent operating under Weichert, Realtors Trademark at all material times to this Plaintiff.

366.    Beato's actions, i.e. selling properties, was the specific actions that Weichert, Realtors Trademark employed Beato to perform.

367.    Under the theories of agency, Weichert, Realtors Trademark, as master, is liable for the

tortious, intentional, and fraudulent actions of Beato, its servant, taken in the course of his work

as a licensed real estate agent.

368.    It is well settled law in Pennsylvania that a master – Weichert, Realtors Trademark – is

liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts,

negligence's, and other malfeasances or misfeasance's of its agent – Beato – committed in the

course of his employment, although the master did not authorize, justify or participate in, or

indeed know of, such misconduct or even if he forbade the acts or disapproved of them.

369.    The UTPCPL authorizes this Honorable Court, in its discretion, to award up to three (3)

times ("treble") the actual damages sustained for violations of the UTPCPL for which relief

Plaintiffs are entitled in full.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request this Honorable Court enter judgment in their favor

and against Defendants, individually, jointly and/or severally, in an amount in excess of $75,000

including compensatory, statutory, treble, and punitive damages, attorney fees and costs, plus

such other and further relief as this Honorable Court deems necessary and just.

Respectfully Submitted,

**WEISBERG LAW**                                    **HOPKINS & SCHAFKOPF, LLC**

 /s/ *Matthew Weisberg*                              /s/ *Gary Schafkopf*
Matthew B. Weisberg                                 Gary Schafkopf
Attorney Id. No.: 85570                             Attorney Id. No.: 83362
L. Anthony DiJiacomo, III                           11 Bala Ave
Attorney Id. No.: 321356                            Bala Cynwyd, PA 19004
7 South Morton Ave.                                 610-664-5200 Ext 104
Morton, PA 19070                                    Fax: 888-283-1334
610-690-0801
Fax: 610-690-0880                                   *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAMON MONTES DE OCA, et al. | : | |
| | : | |
| Plaintiffs, | : | NO.: 3:17-cv-00837-RDM |
| | : | |
| v. | : | |
| | : | |
| IGNACIO BEATO, et al. | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Weisberg, Esquire, hereby certify that on this 8th day of August, 2017, a

true and correct copy of the foregoing Plaintiffs' First Amended Civil Action Complaint was

served via ECF, upon the following parties:

William D. Longo, Esq.
Margolis Edelstein
The Curtis Center
170 S. Independence Mall W.
Suite 400E
Philadelphia, PA 19106-3337

**WEISBERG LAW**

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG
*Attorney for Plaintiffs*